IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
JUDGE WALKER D. MILLER

Civil Action No. 07-cv-01079-WDM

In Re:

TRUDY ANN THOMAS,

Debtor.

DAVID J. ADAMS

    Plaintiff/Appellant,

v.

TRUDY ANN THOMAS,

    Defendant/Appellee.

**MEMORANDUM OPINION AND ORDER**

Miller, J.

    Plaintiff/appellant David J. Adams d/b/a Bulldog Construction Services (Assignee) appeals the April 23, 2007 order of United States Bankruptcy Judge A. Bruce Campbell holding that Assignee Is not a real party in interest and therefore does not have standing to maintain an adversary proceeding against Defendant/appellee Trudy Ann Thomas (Debtor). There are essentially two issues on appeal: (1) whether a valid assignment from Debtor's creditors to Assignee occurred; (2) whether the assigned claims are those of the creditor corporations, rather than the Assignee as an individual, such that the corporations must be represented by counsel and not the *pro se* Assignee in the adversary proceeding.

    I have considered the parties' written and oral arguments, as well as the evidence

contained in the record on appeal from the Bankruptcy Court. For the reasons set forth below, I will affirm Judge Campbell's decision, but on alternative grounds.

Background

Debtor was an officer, director, and 20% shareholder of a construction company, Home Improvement Plus, Inc. ("HIP"). HIP filed for bankruptcy on January 19, 2005. Debtor filed an individual Chapter 7 petition for bankruptcy on October 12, 2005, which sought to discharge HIP debts attributable to her personally. Another HIP officer and shareholder, John Lucio ("Lucio"), filed a personal bankruptcy petition on January 25, 2005, also seeking to discharge certain debts of HIP.

Assignee filed adversary proceedings in the bankruptcy cases of both Debtor (Adv. Pro. No. 06-1133 ABC, filed January 6, 2006) and Lucio (Adv. Proc. No. 05-1348 ABC, filed April 21, 2005). In both cases, he purported to be the assignee of claims held by various HIP subcontractors allegedly owed money from HIP, specifically: (1) Kycon, Inc., (2) New Frontier Concrete, Inc., (3) Rich Garcia Concrete, (4) Big Horn Roll-Off Services LLC, and (5) Hirschfield Home Improvement. In both adversary proceedings, Assignee contested the discharge of the subcontractor debts under 11 U.S.C. § 523(a)(4). Specifically, he claimed that Debtor had violated the provisions of C.R.S. § 38-22-127 (the "Trust Fund Statute"), which requires that all funds disbursed to any contractor in a construction project be held in trust for payment to "subcontractors, laborer or material suppliers, or laborers who have furnished laborers, materials, services, or labor, who have a lien, or may have a lien, against the property. . . ." C.R.S. § 38-22-127(1). The Trust Fund statute also imposes record keeping obligations on contractors. C.R.S. § 38-22-

127(4). Colorado courts have held that section 38-22-127 creates a fiduciary duty or trust relationship running to those identified in the statute. *Alexander Co. v. Packard*, 754 P.2d 780, 782 (Colo. App. 1988). The Trust Fund Statute also provides that failure to keep disbursed funds in trust is theft, entitling injured parties to pursue remedies under the civil theft statute, including treble damages. C.R.S. § 18-4-405. The Tenth Circuit has established that a debt owed under the Trust Fund Statute is not dischargeable pursuant to the exception for fiduciary fraud or defalcation set forth in 11 U.S.C. § 523(a)(4). *In re Regan*, 477 F.3d 1209, 1211 n. 1 (10th Cir. 2007).

Debtor filed a Motion to Dismiss the adversary proceeding on the theory that Assignee was not the real party in interest because the assignments were not valid. Judge Campbell denied the motion but bifurcated the trial so as to first address the issue of Assignee's status. At trial, the written assignments were entered into evidence and the principals of the subcontracting entities each gave testimony. The written assignments are simple one-page documents which provide that the subcontractor assigns the rights and claims to Assignee and will receive 50% of whatever Assignee recovers as a result of his collection efforts. Four of the assignments are identical and provide as follows:

> I, [subcontractor], do hereby fully and completely assign to David J. Adams, all rights to any and all claims [subcontractor] has or may have against Home Improvement Plus, Inc., John Lucio, Trudy Thomas, Wesley Thomas, or any other individual or entity, arising from any transaction or agreement with Home Improvement Plus, Inc., John Lucio, Trudy Thomas, Wesley Thomas, or any of their authorized agents. Consideration for this assignment shall be 50% of any amounts collected by David J. Adams on this claim. It is understood that this Assignment shall make David J. Adams the sole party in interest to any action regarding these claims,

3

> and that [subcontractor] shall have no right to any action relating to these claims until such time that Adams assigns those rights to [subcontractor]. This "Assignment of Rights to Claim" represents the full and complete agreement between [subcontractor] and David J. Adams.

The fifth assignment, from New Frontier Concrete, Inc., simply assigns the rights, with no provisions regarding sharing of recovery or any other kind of consideration.

Each subcontractor gave essentially the same testimony at trial: (1) the subcontractor intended to give Assignee all rights to the claim; (2) the subcontractor does not believe he/it owns a claim or has any rights against Debtor unless the claim is reassigned; (3) the subcontractor has taken no action to collect on the debt; (4) the subcontractor has no control over Assignee or the litigation. Only one assignment is dated (that of New Frontier Concrete, dated April 4, 2005) and there was no testimony as to when the other assignments occurred. It is undisputed that Assignee is not an attorney and that he solicited the assignments from these subcontractors.

Assignee has appeared in several prior bankruptcy cases asserting the same types of claims as a purported assignee of the debtor's creditors. *See In re Tamminga*, Bankr. Case No. 04-21621 MER, Adv. Proc. Case No. 04-1797 MER; *In re Pederson*, Bankr. Case No. 04-23668 HRT, Adv. Proc. Case No. 04-1858 HRT.[1] In both *Tamminga* and *Pederson*, Assignee's claims were dismissed on the grounds that he was not the real party in interest because the assignments did not completely and irrevocably vest title to the claims in Assignee. Those decisions in large part rested on an ancillary agreement for

---

[1] In other previous cases, the parties settled or the issue otherwise was not resolved in the course of the proceedings.

collection signed by the subcontractors, which gave the subcontractors the right to unilaterally cancel the collection agreement, and presumably revoke the assignments. At oral argument in this case, the parties explained that the subcontractors here signed identical collection agreements. After the decisions in *Tamminga* and *Pederson*, however, Assignee replaced the agreements with the current assignment forms, apparently with the intent to supersede the collection agreements.

## Bankruptcy Court Order

Judge Campbell dismissed the adversary proceeding in an oral ruling on April 23, 2007 based on his conclusion that Assignee was not the real party in interest. Trial Transcript at 78. Judge Campbell found the witnesses to be credible and sincere. *Id*. He noted that the assignments "purport on their face to be absolute" but determined that the assignments in fact were not indefeasible. *Id*. Specifically, he concluded that the subcontractors still had a stake in the action and that Assignee could not simply walk away from the claims without leaving the subcontractors redress. *Id*. at 78-79. He contrasted this assignment to one where a collection agency pays up front for the claim and can then decide to abandon the claim. *Id*. at 79. In this situation, however, Judge Campbell concluded that Assignee could not simply abandon the claims. Since the subcontractors still had a stake, the assignments were not indefeasible and Assignee was not the real party in interest. *Id*. at 80. Accordingly, Assignee was acting in a representative capacity and could not prosecute the claims *pro se*. *Id*. Judge Campbell characterized the relationship as a kind of partnership whereby Assignee took on the burden of litigation and the subcontractors took a passive role or participated as much as necessary for the claims

5

to succeed. *Id.* at 81. However, Judge Campbell noted, partnerships are also precluded from appearing in court except through counsel. *Id.*[2]

### Standard of Review

The district court functions as an appellate court and is authorized to affirm, reverse, modify or remand the Bankruptcy Court's ruling. Bankr. R. 8013. I may set aside that court's findings of fact only if they are clearly erroneous. *In re Blehm Land & Cattle Co.*, 859 F.2d 137, 138 (10th Cir. 1988). Conclusions of law are subject to *de novo* review. *Id.* Mixed questions of fact and law are reviewed *de novo* if they involve primarily legal issues and for clear error if they involve primarily factual considerations. *In re Wes Dor Inc.*, 996 F.2d. 237, 241 (10th Cir. 1993). Legal conclusions drawn from facts are reviewed *de novo*. *In re Golf Course Builders Leasings, Inc.*, 768 F.2d 1167, 1169 (10th Cir. 1985).

### Discussion

The Bankruptcy Rules incorporate Fed. R. Civ. P. 17 regarding real parties in interest. Fed. R. Bankr. P. 7017. In making the determination of whether an assignee is a real party in interest here, I refer to the substantive law of Colorado. *Hoeppner Constr. Co. v. United States*, 287 F.2d 108, 111 (10th Cir. 1960).

There is no real dispute that an assignee for collection may bring suit in his own name as the real party in interest to recover on the claim. *See, e.g., Platte Valley Mortgage Corp. v. Bickett*, 916 P.2d 631, 633 (Colo. App. 1996) ("An assignee of a debt for collection is also a real party in interest."); *see also Thibodeaux v. Creditors Serv., Inc.,*

---

[2]Judge Campbell then dismissed the adversary proceeding in the Lucio case, concluding that it involved the identical issues and evidence. The appeal of the Lucio adversary proceeding is now pending as Case No. 07-cv-01080-LTB.

551 P.2d 714, 715-16 (Colo. 1976) (licensed collection agency is real party in interest in action as assignee of creditor; such actions are not against public policy and do not amount to unauthorized practice of law). Colorado law also recognizes the transferability of a chose in action. *See Ford v. Summertree Lane Ltd. Liability Co.,* 56 P.3d 1206, 1209 (Colo. App. 2002) (a chose in action, defined as, "[a] right to receive or recover a debt, or money, or damages for breach of contract, or for a tort connected with contract, but which cannot be enforced without action," is transferable personal property) (citations omitted). The issue in this case (as it was in the previous cases involving Assignee) is whether the assignments to Assignee are valid and vest indefeasible title in Assignee and, secondarily, whether Assignee may litigate the assigned claims *pro se*.

Assignee argues that an assignee of a contingency fee assignment for collection is a real party in interest and cites various cases which do support this proposition; none of them, however, address the issue of *pro se* collection litigation. Assignee also cites various provisions of the Colorado Fair Debt Collection Practices Act ("CFDCPA") for the proposition that he, as a person collecting a debt received by assignment, is entitled to bring these actions. *See, e.g.,* C.R.S. § 12-14-103(2)(a) (defining "collection agency"). However, it does not appear that this statute is applicable, as the definition of "debt" under the CFDCPA includes amounts owed by a consumer, but not by a business. C.R.S. § 12-14-103(6).[3]

---

[3]It should be noted that Assignee argued in the Bankruptcy Court as well as in his reply brief on appeal that he was not required to be licensed under the CFDCPA or otherwise comply with its provisions because he is not collecting a consumer debt. *See, e.g.,* Reply at 2.

7

Nonetheless, I cannot affirm the Bankruptcy Court's ruling on the same grounds as the *Tamminga* and *Pederson* decisions, which Debtor heavily relied upon in her brief on appeal. I see no evidence in the record to support the Bankruptcy Court's determination that the subcontractors here retained an interest in the claims, beyond their contingent right to payment. On their face, the assignments appear irrevocable. The unrebutted testimony of the subcontractors was that they expected nothing more than a portion of a recovery. The assignments do not contain an obvious right to revoke[4] in the event that Assignee fails to pursue the claims. Indeed, Assignee appears to have full control of the claims. As the Assignee stated in argument, he could decide not to pursue the claim against Debtor, even to the extent of releasing Debtor. The Assignor-Subcontractors would have no right against Debtor as their only remedy would be against the Assignee. Still, this is not an absolute assignment for present consideration – i.e., an exchange of $10,000 for a $100,000 claim. It is essentially an assignment for a contingent fee and is clearly distinguishable from transferring all one's interest in a claim for a present consideration.[5] Accordingly, I conclude the focus should be on the contingent fee arrangement and not simply on the unconditional assignment.

In Debtor's supplemental brief, which I requested after oral argument, she provides

---

[4] The assignments are at best ambiguous regarding revocation, as they provide that the subcontractor "shall have no right to any action relating to these claims until such time that Adams assigns those rights" back to the subcontractor. Although there was some exploration of the meaning of this term in the trial, it was not clearly established whether the subcontractors believed they could revoke the assignments if they were dissatisfied with Assignee's actions.

[5] Such an exchange is based on the classic notion that a bird in the hand is worth more than two or more in the bush.

more support for her argument that the assignments here are invalid because of equitable or public policy reasons. Whether a claim under the Trust Fund Statute is non-assignable appears to be an issue of first impression in Colorado and I have been unsuccessful in finding authority from other jurisdictions relating to similar statutes. The case law cited by Debtor demonstrates that a claim under the Trust Fund Statute may be distinguishable from a simple contract debt and, instead, may fall into one of the several exceptions to assignability carved out by several Colorado court decisions.

"While the law favors assignability of rights generally, it does not allow assignments for matters of personal trust or confidence, or for personal services." *Roberts v. Holland & Hart*, 857 P.2d 492, 495 (Colo. App. 1993). The court in *Roberts* determined that a legal malpractice claim involves matters of personal trust and confidence and was therefore not assignable. *Id.* The court's decision also rested on policy grounds, noting concerns that "[t]he assignment of such claims could relegate the legal malpractice action to the market place and convert it to a commodity to be exploited and transferred to economic bidders who have never had a professional relationship with the attorney and to whom the attorney has never owed a legal duty . . . ." *Id.* (quoting *Goodley v. Wank & Wank, Inc.,* 62 Cal. App. 3d 389, 397, 133 Cal. Rptr. 83, 87 (1976)). This commercialization of malpractice claims could encourage litigation, promote champerty, and force attorneys to defend themselves against strangers, placing a great burden on the legal profession, the judicial system, and could disrupt the attorney-client relationship. *Id.* at 495-96 (quoting *Goodley*).

More recently, a division of the Colorado Court of Appeals also held that a wrongful death claim is not assignable. *Espinosa v. Perez,* 165 P.3d 770 (Colo. App. 2007) (*cert.*

*denied* Aug. 27, 2007). The division noted that, at common law, "only property claims were assignable because they survived death." 165 P.3d at 773. A wrongful death claim is a creature of statute, providing a cause of action in favor of a limited class of designated persons who presumably have a "personal and close relationship" with the decedent. *Id*. The division also expressed concern that "permitting assignment of a wrongful death claim would increase the risks associated with maintenance and champerty." *Id*. at 773-74.

In a related issue, a number of recent cases from state and federal courts in Colorado have addressed whether statutory claims based on receipt of unwanted faxes are assignable. In two related rulings, my colleague former Chief Judge Babcock determined that such claims, based on the Colorado Consumer Protection Act ("CCPA"), C.R.S. § 6-1-101 *et seq.*, and Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 *et seq.*, were not assignable. *See US Fax Law Center, Inc. v. iHire, Inc.*, 362 F. Supp. 2d 1248 (D. Colo. 2005) (analyzing the TCPA) ("*iHire I*"), *aff'd* 476 F.3d 1112 (10th Cir. 2007); *US Fax Law Center, Inc. v. iHire, Inc.*, 374 F. Supp. 2d 924 (D. Colo. 2005) (analyzing CCPA) ("*iHire II*"). Chief Judge Babcock's analysis in *iHire I*, regarding whether a TCPA claim is assignable, is informative. It begins again with the premise that only a cause of action that survives the death of a party can be assigned. 362 F. Supp. 2d at 1251. Under Colorado's survival statute, C.R.S. § 13-20-101(1), punitive damages and penalties may not be recovered, and damages are limited to "loss of earnings and expenses sustained or incurred prior to death." *Id*. Moreover, under Colorado law, personal torts not based on injury to property do not survive the life of the individual claiming party. *Id*. Chief Judge Babcock thus concluded that claims under the TCPA,

which is designed to protect privacy interests, would not be assignable because they "amount to personal-injury privacy claims." *Id.* at 1252.

Finally, Chief Judge Babcock held on an alternative ground that a TCPA claim is not assignable because the statute is penal in nature. *Id.* at 1253 ("Generally, the right to recover a penalty is not assignable in the absence of express statutory language to the contrary because the assignability of such claims encourages litigation.") Using a four-part test outlined in *Palmer v. A.H. Robins Co.,* 684 P.2d 187, 214 (Colo. 1984), Chief Judge Babcock determined that the TCPA was penal, as it: (1) created a new and distinct statutory cause of action; (2) requires no proof of actual damages as a condition of recovery; (3) imposes a penalty in excess of actual damages; (4) serves the public interest through a deterrent effect by the damages awarded. *Id*. *See also McKenna v. Oliver,* 159 P.3d 697, 699-700 (Colo. App. 2006) (citing *iHire I* decision with approval and holding that TCPA claim amounts to a claim of a violation of right to privacy and not assignable).

Even though these assignments may appear to be in the nature of property assignments, I agree with Debtor that a number of the policies and issues identified in the *Roberts, Espinosa,* and *iHire I* and *iHire II* cases are present here. Here, the statute at issue creates a cause of action for *specifically identified* parties and is silent on assignability.[6] The Trust Fund Statute creates a statutory fiduciary duty, which appears to be personal to those who have provided goods or services to a construction project. Although not implicating precisely the same concerns as the relationship between attorney

---

[6]The civil theft statute also limits a cause of action to the "owner" of stolen property and does not expressly contemplate assignment of such a claim. C.R.S. § 18-4-405.

11

and client or between close family members, the duty nonetheless is based on the relationship between the parties, to which Assignee is undisputably a stranger. The obligation of a general contractor or subcontractor to ensure that the parties supplying materials and services to a construction project are compensated arises because the subcontractors and materialmen are not paid directly by the property owner but rather indirectly though the general contractor, which then places the contractor in a position of trust in relation to those protected by the Trust Fund Statute. This also distinguishes the assignment of a Trust Fund claim from the collection of a simple contract debt or accounts receivable. I am reluctant to conclude that Debtor's statutorily-created fiduciary duty to the parties actually providing services or material, and who have or could have a lien on the subject property, can be transferred by way of assignment to a third party by virtue of transferring the contract debt.

I am particularly troubled by the assignment of a claim under the Trust Fund Statute because of the imported civil theft treble damages penalty. As noted above and as demonstrated by Assignee's conduct, permitting assignment of the claim and its potential for large penalties promotes litigation and solicitation of assignments, which would be prohibited of an attorney as champerty. The Trust Fund Statute, in combination with the treble damages provision of the civil theft statute, also satisfies several of the criteria of a penal, as opposed to a remedial, statute. *See In re Marriage of Allen*, 724 P.2d 651, 656 (Colo. 1986) (civil theft statute is intended to be punitive, rather than remedial). For example, the cause of action is created by statute, imposes a penalty significantly in excess of actual damages, and serves a public policy interest of protecting subcontractors

12

by creating a strong deterrent to misappropriation of funds disbursed by a property owner to a general contractor.

Based on the above, I conclude that the courts of the state of Colorado would hold that claims under the Trust Fund Statute are not assignable on a contingency fee basis for collection purposes.

Further, Assignee's actions may also be considered to be the unlawful practice of law. Under the terms of the assignments, Assignee promises to share the proceeds of his recovery with the assigning subcontractors. Accordingly, he is still acting in a representative capacity to some extent and not exclusively on his own behalf. It is well established that although a natural person may represent himself or herself in court, a business entity must be represented by counsel.[7] *Flora Constr. Co. v. Fireman's Fund Ins. Co.,* 307 F.2d 413, 414 (10th Cir. 1962). There is significant authority from other jurisdictions demonstrating that courts will look past the legal title to determine whether a *pro se* purported assignee is circumventing rules and statutes requiring that corporations be represented by counsel in legal proceedings. *See, e.g., Pridgen v. Andresen*, 113 F.3d 391, 393 (2d Cir. 1997) ("appearance *pro se* denotes (in law latin) appearance for one's self; so that a person ordinarily may not appear *pro se* in the cause of another person or entity"; lay person may not assert *pro se* a claim assigned to litigant by the corporation); *Palazzo v. Gulf Oil Corp.,* 764 F.2d 1381, 1385 (11th Cir. 1985) (assignment of corporate claim to corporate officer did not obviate requirement that corporation be represented by

---

[7]Assignee has cited a number of cases in which a corporation assigned a claim to an individual to prosecute, but none of the cases appear to involve *pro se* litigation by the assignee.

counsel); *Jones v. Niagara Frontier Transp. Auth.*, 722 F.2d 20, 23 (2d. Cir. 1983) (noting that federal courts have disapproved "any circumvention of the rule [of corporate representation by counsel] by the procedural device of an assignment of the corporation's claims to the lay individual"); *Jones v. Dacosta*, 930 F. Supp. 223, 225 (D. Md. 1996) (corporation may not assign interest in case to individual in order to permit individual to litigate claim *pro se*); *Capital Group, Inc. v. Gaston & Snow*, 768 F. Supp. 264, 265-66 (E.D. Wis., 1991) (same holding); *Roberts v. State Dep't of Revenue*, 162 P.3d 1214, 1220 (Alaska 2007) (business's assignment of claim to owner was invalid attempt to circumvent statutory requirement that business be represented by an attorney); *Driscoll v. T.R. White Co., Inc.,* 805 N.E.2d 482 (Mass. 2004) (assignment of corporations claims by corporation to sole shareholder could not authorize non-attorney shareholder to represent corporation in court). *But see Traktman v. City of New York*, 582 N.Y.S.2d 808 (corporation's assignment of claim to its employee did not violate statutes prohibiting corporation from appearing *pro se*).

Finally, while it is established in Colorado that an assignment for collection to a collection agency is not the unauthorized practice of law if the collection agency retains counsel, *see Thibodeaux*, *supra*, it is unclear whether the Colorado courts would hold the same if the agency is a sole proprietorship acting *pro se*. As long as the subcontractors are not selling their claim for present consideration but instead are retaining an interest in the proceeds of the claims, Assignee is acting partially on their behalf in a representative capacity. By pursuing litigation to recover on the claims, he is arguably taking actions amounting to the practice of law. *Unauthorized Practice of Law Committee*

14

*of the Supreme Court of Colorado v. Grimes,* 654 P.2d 822, 825 (Colo. 1982) (respondent's actions in accepting fees, preparing legal motions, notices, memoranda, and advising members of the public as to what he thought their legal rights and obligations were amounted to unauthorized practice of law). Courts in other jurisdictions have held that similar practices amount to the unauthorized practice of law. *See, e.g., In re UPL Advisory Opinion 2002-1*, 591 S.E.2d 822 (Ga. 2004) (approving advisory opinion from the Standing Committee on the Unlicensed Practice of Law that an individual collector, not an attorney, who accepts transfer of an outstanding account from a physician for a set fee or contingency fee and thereafter files suit to recover debt is engaging in the unauthorized practice of law unless physician relinquishes all legal and financial interest in the accounts).

In light of the extent to which Assignee's practice of soliciting assignments of claims under the Trust Fund Statute and litigating them *pro se* runs afoul of several policy interests well founded in Colorado law, I conclude that the assignments from the subcontractors here are invalid. Accordingly, Assignee is not the real party in interest and

has no standing to challenge the discharge of the debts in Debtor's bankruptcy proceeding.

Accordingly, it is ordered:

1. The decision of the Bankruptcy Court is affirmed.

DATED at Denver, Colorado, on March 25, 2008.

BY THE COURT:


s/ Walker D. Miller
United States District Judge